IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JULIE GARCIA and RICARDO GARCIA,  )
                                   )
            Plaintiffs,            )   TC-MD 190032R
                                   )
      v.                           )
                                   )
DEPARTMENT OF REVENUE,             )
State of Oregon,                   )
                                   )
                                   )
            Defendant.             )   **DECISION**

Plaintiffs appealed Defendant's Notice of Assessment, dated October 9, 2018, for the

2015 tax year.  Plaintiffs also appealed Defendant's Notices of Assessment, dated January 7,

2019, for the 2016 and 2017 tax years.  On May 8, 2019, the court issued an order dismissing

Plaintiffs' appeal of the 2015 tax year because the complaint was filed untimely pursuant to ORS

305.280(2).  The court also struck Plaintiffs' request to "drop all penalties and interest" because

they were discretionary to the Defendant and thus not appealable to this court.[1]

A trial was held on September 10, 2019, in the courtroom of the Oregon Tax Court.

Ricardo Garcia appeared on behalf of Plaintiffs.  Julie Garcia (Garcia) testified on behalf of

Plaintiffs.  Dannielle Broeske (Broeske) and Michele Hillen appeared on behalf of Defendant.

Broeske testified on behalf of Defendant.  Court-provided Spanish interpreters Michael Traffas

and Yesenia Stedman aided Ricardo Garcia.  Defendant's Exhibits A to M and A to N were

admitted into evidence without objection.[2]  Plaintiffs did not submit exhibits.

---

[1] Discretionary penalties are not reviewable by the court under *Pelett v. Dept. of Rev.*, 11 OTR 364 (1990).

[2] Defendant submitted one binder of exhibits for 2016 (labeled A through M) and one binder of exhibits for 2017 (labeled A through N).  The court admonished Defendant to follow Tax Court Rule-Magistrate Division (TCR-MD) 12 in the future

# I. STATEMENT OF FACTS

Plaintiffs owned and operated an adult foster care business out of their home during the 2016 and 2017 tax years. Garcia testified that the foster care business was her primary source of income, although she was briefly employed by a hospital in 2016. Garcia testified that the State of Oregon paid for some of her client's foster care charges, which she understood was not taxable to her. Garcia testified that she received funds directly from her foster care clients for additional services, which she understood was taxable.

## A. *Plaintiffs' Evidence*

### 1. 2016 tax year

Garcia testified she cared for two foster care clients in 2016. Plaintiffs' tax preparer advised Defendant in writing that Garcia cared for three foster care clients in 2016. (Ex D at 16.) On Plaintiffs' 2016 tax return they reported gross income from the foster care business (not including untaxable payments from the state) in the amount of $6,864. (Ex C at 3.) Plaintiffs provided Defendant with a worksheet prior to trial showing gross income directly from her foster care clients totaling $22,738. (Ex G at 2, 3.)

Plaintiffs filed form 8829 reporting deductions for business use of their home as follows:

| | |
|---|---|
| Mortgage expense | $8,053 |
| Property tax | $2,082 |
| Insurance | $793 |
| Repairs | $3,000 |
| Utilities | $8,727 |

Plaintiffs reduced those expenses using a percentage of exclusive business use of the home to the home size, calculated at 1,300 square feet divided by 1,800 square feet, or approximately 72.2 percent of business use of their home. Plaintiffs net deduction on form 8829 was $9,042 (not including a claim for carryover for prior years). In addition to deductions on form 8829,

Plaintiffs took deductions for their foster care business on their Schedule C in the amount of $5,000 under the category "cost of goods sold" (described as cost of labor) and other general expenses, including vehicle expense, totaling $4,402.

2.      *2017 tax year*

Garcia testified that in 2017 she cared for three foster clients in January and February; four clients from March until October; and five clients for the remainder of the year. She reported on her tax return $30,161 in gross receipts directly from her clients.

On her 2017 return, Garcia deducted $7,885 in mortgage expenses, $1,994 in property taxes, $9,169 for utilities and then reduced it by her business use of their home percentage at 77.2 percent. Garcia also deducted for $642 for car expenses, $824 for insurance, $255 for legal and professional services, $500 for office expense, $650 for taxes and licenses, $7,200 in deductible meals and entertainment, and $1,320 for utilities.

B.      *Defendant's Evidence*

Broeske testified she has been an auditor with Defendant for two years, is an enrolled agent, and a licensed tax preparer. During Broeske's audit of Plaintiffs' 2015 return, she advised Plaintiffs to amend their 2016 and 2017 returns if they were prepared in the same way as their 2015 return. Broeske testified that when Plaintiffs did not comply, she opened those additional years for audit.

Broeske testified that Defendant's Notices of Deficiency for the 2016 and 2017 tax years denied all of Plaintiffs' business deductions because they failed to submit any documentation or substantiation pursuant to her written request. (Ex A.) Subsequently, Plaintiffs provided some documentation regarding their income and expenses, and their bank account statements. Broeske obtained information from the state showing a different number of foster clients than reported by

Plaintiffs on their tax returns. Broeske performed a bank deposit analysis by totaling deposits into Plaintiffs' bank accounts, and then subtracting non-income deposits from the state, returned items, bank corrections, and tax refunds. She compared the resulting figure with Plaintiffs' net wages and reported gross taxable receipts. As a result of the bank deposit analysis, Broeske concluded that Plaintiffs understated their gross income for each of the tax years at issue. Broeske also noted that since Garcia's foster care business received payments from the state that were not subject to income tax, their business expenses and deductions for business use of their home needed to be reduced pursuant to Internal Revenue Code (IRC) section 265.

1.      *2016 tax year*

Broeske performed a bank deposit analysis on Plaintiffs' accounts for the 2016 tax year. She found total bank deposits to the accounts were $181,806. (Ex E at 1.) From that total she subtracted $32,988 as transfers between accounts, $556 in returned items, $96 in bank corrections, $1,828 in tax refunds, and $45,951 in non-taxable state payments. This resulted in net deposits of $100,387. From that figure Broeske subtracted net wages of $35,154, gross receipts Plaintiffs reported on their Schedule C of $6,864, and a deposit from a retirement account of $2,713. After subtracting all of the figures, Broeske found unaccounted for (understated) gross receipts of $55,656.

Broeske testified that she reviewed Plaintiffs' food expenses she received after the initial audit and allowed expenses of $10,189.43. (Ex J.) She disallowed the remainder of the amounts because she determined they were either personal items or the receipts were unreadable.

Broeske testified that she calculated the expense for business use of Plaintiffs' home starting with mortgage interest of $8,053, real estate taxes at $2,082, insurance at $735, repairs and maintenance at $989, and utilities at $4,195. Broeske reduced those total expenses by the

percentage of business home square footage to personal home square footage, that she calculated at 22.22 percent (400 square feet divided by1,800 square feet)[3]. She also reduced the expenses based on the apportionment of non-taxed sums Plaintiffs' received from the state divided by the taxable sums Garcia received directly from her foster clients pursuant to IRC section 265. The resulting calculation was a deduction of $2,539.68. (Ex K at 1.) Broeske then increased Plaintiffs' self-employment tax deduction by $857. (Ex L at 1.)

*2. 2017 tax year*

Broeske performed a bank deposit analysis on Plaintiffs' accounts for the 2017 tax year. She found total bank deposits to the accounts were $163,205. (Ex E at 1.) From that total she subtracted $25,043 as transfers between accounts, $467 in returned items, $4,873 in tax refunds, and $67,236 in non-taxable state payments. From that sum Broeske subtracted net wages of $25,380, interest of $10, gross receipts Plaintiffs reported on their schedule C of $30,161, and unemployment insurance benefits of $262. After subtracting all of the figures, Broeske found unaccounted for gross receipts of $9,769.

Broeske testified that she reviewed Plaintiffs' food expenses she received after the initial audit and allowed expenses of $8,844. (Ex J.) She disallowed the remainder of the amounts because she determined they were either personal items or the receipts were unreadable. Broeske also allowed $100 for business licenses. (Ex K at 1.)

Broeske testified that she calculated the expense for business use of Plaintiffs' home starting with mortgage interest of $7,885, real estate taxes at $1,994, insurance at $695, repairs

---

[3] The court notes that neither party submitted any evidence to support their respective percentages constituting exclusive business use of Plaintiffs' home. Nevertheless, Plaintiffs maintained the burden of proof on the issue and Defendant's percentage does give Plaintiffs more in deduction than they had in the Notice of Assessment.

and maintenance at $885, and utilities at $6,228. Broeske reduced those total expenses by the percentage of business home square footage to personal home square footage, 22.22 percent. She also reduced the expenses based on IRC section 265. The resulting calculation was a deduction of $1,021.54. (Ex L at 1.) After modifying the deductions above, Broeske increased Plaintiffs' deduction for self-employment tax by $590. (Ex M at 1.) She also increased Plaintiffs' itemized deductions to $9,927. (Ex N at 1.)

## II. ANALYSIS

The facts of this case are primarily about numbers, while the analysis is about legal concepts. The first concept is the use of a bank deposit analysis to determine Plaintiffs' gross taxable receipts. Next, the substantiation of business expenses. Finally, how deductions for expenses related to a foster care business are reduced by IRC section 265 and by percent of business use of a home.

In analyzing Oregon income tax cases, the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals. ORS 316.007.[4] Second, in cases before the court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. That standard is met by a showing that "the facts asserted are more probably true than false[.]" *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958). Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).

---

[4] References to the Oregon Revised Statutes (ORS) are to 2015.

Lastly, a taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. IRC § 6001; Treas Reg § 1.6001–1(a).

A.      *Bank Deposit Analysis*

"Where a taxpayer's books do not clearly reflect income, the Department of Revenue may demonstrate unreported income 'by any practicable proof that is available in the circumstances of the particular situation.' " *Danielson v. Dept. of Rev.*, TC-MD 160282C, WL 5158730 at *3 (Or Tax M Div Nov 7, 2017) (quoting *Brenner v. Dept. of Rev.*, 9 OTR 299, 306 (1983)) (internal citations omitted). The department may use methods such as a bank deposit analysis to determine a taxpayer's unreported income. *Brenner,* 9 OTR at 302.

The history and facts of this case support Defendant's use of a bank deposit analysis. Plaintiffs did not provide *any* records during the audit. It was also not clear that Plaintiffs kept track of their payments received directly from their clients or that their income from those sources were accurately reported on their tax returns.

In this case, Defendant completed a bank deposit analysis for both tax years in issue, adding all account deposits and taking out those amounts that were not taxable income. Documents Plaintiffs provided to Defendant after the initial audit demonstrate that Plaintiffs received more in payments from their foster care clients than were reported on their returns. Plaintiffs' only defense was the plain argument that it could not be so. Defending against a bank deposit analysis can be a difficult task, but it is not impossible. See, *Bradshaw v. Dept. of Rev.*, TC-MD 180405R, WL 6836031 (Or Tax M Div Dec 13, 2019). Here, Plaintiffs offered no explanation for the discrepancy in their deposits or reported earnings and did not demonstrate that Defendant's analysis erred in any respect. Thus, the court accepts Defendant's bank deposit analysis and finds Plaintiffs had unreported additional income of $55,656 in 2016 and $9,769 in 2017.

B.      *Deduction for business expenses*

The tax code allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." IRC §162(a). Taxpayers are not allowed a deduction for personal, living, or family expenses except where specifically allowed in the code. IRC §262(a). The Notices of Assessment denied all of Plaintiffs' business deduction after Plaintiffs failed to provide any documents or substantiation of their business expenses. Subsequently, Plaintiffs supplied documents and receipts to Defendant. Broeske testified and provided copies of the receipts she received, along with worksheets showing the amount of expenses that appeared to have a business purpose. Plaintiffs offered no evidence substantiating that they were entitled to additional deductions or that Defendant's calculations were in error. Thus, the court accepts Defendant's calculation of Plaintiffs' business expenses for the 2016 and 2017 tax years.

C.      *Reduction of Business Expenses Under IRC Section 265*

IRC section 131(a) excludes from gross income "amounts received by a foster care provider * * * as qualified foster care payments." Such payments include those paid by the state or a political subdivision thereof "to the foster care provider for caring for a qualified foster individual in the foster care provider's home[.]" IRC § 131(b)(1). The parties agree that Plaintiffs received foster care payments from the state that were not includable in their gross income during the 2016 and 2017 tax years. As a corollary to that exclusion from gross income, the tax code does not allow a deduction for expenses paid for using non-taxed income. IRC § 265. The law makes intuitive sense: a taxpayer should not be allowed to both receive tax free money *and* get a deduction when they spend that money. Treasury Regulation section 1.265-1(c) provides for two methods of allocating or apportioning expenses from exempt foster care income. One method is to directly track the funds. That method is not possible based on the

evidence presented in this case. The second method is to use a percentage of taxable income divided by total income.[5] An allocation percentage method was used by the auditor that appears appropriate under the circumstances of this case. The figures presented by Defendant appear accurate and were not contradicted by any evidence presented by Plaintiffs. The court adopts Defendant's reduction of their business deductions pursuant to IRC section 265.

### III. CONCLUSION

After careful consideration, the court finds that for the 2016 tax year, Plaintiffs' income is increased by $55,656. Their deduction for food expense is $10,189, business use of their home is $2,540, and their net itemized deductions are $10,777. Plaintiffs' deduction for self-employment tax is increased by $857. The court also finds that for the 2017 tax year, Plaintiffs' income is increased by $9,769. Their deductions are increased by $100 for taxes and licenses; $8,844 for food; and $1,022 for business use of their home. Their itemized deductions are increased by $497 and their self-employment tax deduction is increased by $590. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[5] "If an expense or amount otherwise allowable is indirectly allocable to both a class of nonexempt income and a class of exempt income, a reasonable proportion thereof determined in the light of all the facts and circumstances in each case shall be allocated to each." Treas Reg § 1.265–1(c).

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part and denied in part. Their income and deductions are adjusted as identified above.

Dated this ＿＿ day of March 2020.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on March 3, 2020.*